## Case No. 15,414.

UNITED STATES v. The HUDSON.

[See Case No. 6,829.]

---

## Case No. 15,415.

UNITED STATES v. HUGER et al.

[1 Hughes. 397;[1] 2 Am. Law Rev. 782.]

Circuit Court, D. South Carolina.   May, 1868.

OFFICIAL BONDS—PAYMENT OF PUBLIC MONEY TO INSURRECTIONISTS.

An officer of the United States in an insurrectionary state of the Confederate government, who had paid money of the United States to the Confederate States during the war, under compulsion, without collusion, contrivance, evasion, or willingness, though actual force was not used to compel him to pay, is not responsible to the United States for its reimbursement, for the reason that the Confederate government had been recognized as a belligerent by the United States, and because the official bond of the officer to the United States implied the obligation on the part of the United States to secure to the obligor such a condition of things as would render his fulfilment of his bond possible.

This was an action on a bond given by the defendant as postmaster of the city of Charleston. The suit was brought to recover a balance of $5,576.41, due the government at the time of the breaking out of the Civil War,

with interest. It appeared that Mr. [Alfred] Huger had been appointed by President Jackson, in 1832, that he had held the office from that time to 1861, and that he had satisfactorily performed all the duties enjoined upon him by law. It appeared further, that he had made considerable effort to turn over the property in his hands to the United States government, but that he had not been able to do so, except as regarded a small part thereof, and that he had finally, on demand, surrendered the balance to the postmaster-general of the Confederate government.

D. T. Corbin, Dist. Atty., for the Government.

Porter, Campbell, Magrath & Rutledge, for defendant.

BRYAN, District Judge. The cases cited in the books all having reference to a settled order of things, all having reference to the possible personal private delinquency, or want of care, or misfortune of the obligor, a condition of things anticipated as probable or possible, and therefore in the minds of the parties to the bond, I hold that the rulings of the supreme court can have no proper application to a class of cases wholly different, and that the party cannot be held to an engagement, not in the mind of either party, and in a condition of things not possibly anticipated by either party, in which one party could not possibly fulfil such engagement, and the other party could not give him any proper help to fulfil it, that is, that without any default on his part, and in the absence of a condition of things which rendered it possible for him to execute the bond, he shall be compelled to execute the bond. That condition of things was presented in a state of civil war, where the territory of which the defendant was a resident was held under the domination of a belligerent—the absolute domination of a revolutionary government struggling for its life, compelled to put forth every possible exertion of power, inevitably arbitrary, and unscrupulous from the very fact of its necessities, and alike unable and unwilling to brook opposition. It was in the very nature of things a military despotism, whose commands must unhesitatingly be obeyed, and in the light of the past, it is but truth to say, whose commands were so obeyed.

The great Civil War from which we have emerged not only demanded despotic powers in the South, but almost equally despotic power in the United States. The great government which succeeded in this contest, that great government itself, with all its mighty resources, was compelled to resort to arbitrary power. Civil liberty was scarcely consistent with the struggle between the two governments. Both were essentially military at the time, drawing all powers to themselves, and compelled of necessity to act in an arbitrary manner, liberty itself being the inevitable sacrifice. It was in such a condition of mili-

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

tary domination that the defendant in this case was called upon, as the only act which implicates him in this matter,—which I conceive could implicate him,—was called upon some time after its domination, and after the United States postal service had ceased. to report the amount of property of the United States in his possession. In my esteem, that demand was peremptory. It was a command to be instantly complied with, not a matter of parley. That command carried with it an expression of force which could not be resisted, could not be resisted any more than its cannon or bayonets, which left the party upon whom the demand was made no alternative but to yield. There was no refuge from the wrath of that government, there was no defence against its power. In my esteem, therefore, the defendant under these circumstances was in the position of one yielding to overwhelming and present force, not to a force that was speculative and distant, but present, certain, and instant, a force so great, inevitable, and overwhelming, that the display of cannon and bayonets could not have added substantially to its compulsory power. The attempt at resistance would have been simply an idle parade. The attempt at resistance would have been regarded, under the circumstances. as a question of power to be punished. The power dominant at that time was a jealous revolutionary power, which could not afford to deal as a well-settled government, which could not admit of debate, whose commands were peremptory, whose exactions could not be trifled with. I instruct you that the demand upon Mr. Huger for the public property of the United States by the Confederate States was a demand that he could not dispute. It was a demand, coming to him under the circumstances, carrying a claim of authority which he had no means to dispute. and which he could not dispute.

You will have to scan the testimony in this case, and your prime duty will be to see whether Mr. Huger did any act which implies collusion, consent, or connivance with the Confederate government. any act which indicates the intention or willingness to betray the United States, and put the Confederate government in possession of this property. If you see in any portion of his conduct. if you see in any act of his, a voluntary yielding of this property to the Confederacy. if in any act of his you see that which implies connivance. a collusion. a willingness to give up this property to the Confederates, then he has been false to his trust. And I beg of you to search the case. and if you see in any portion of his conduct any act which implies a willingness to yield this property. and that in parting with this property to the Confederate government he has not acted throughout upon compulsion. moral or physical. equal to the overwhelming force of necessity. then he has been false to his trust.

I am asked to rule thirdly, that said Confederate States or government of which John A. Reagan was an officer or agent, was an unlawful combination of divers persons, citizens of the United States, engaged in unlawful insurrection and rebellion against the government of the same, and within the territory thereof, unlawfully usurping the powers of government. and as such it continued to be unrecognized as having any lawful existence till suppressed by the military power of the United States. hence neither said Confederate government nor its officers or agents could originate any legal action or issue any order which the defendant. Alfred Huger. was bound to obey.

I instruct you that, in so far as that said Confederate States was an unlawful combination of divers persons, citizens of the United States, engaged in unlawful insurrection and rebellion against the government of the same, and within the territory thereof unlawfully usurping the powers of government. and. as such, it continued to be unrecognizable as having any lawful existence. till suppressed by the military power of the United States, etc., I give the instruction. but do not give the conclusion, that is, that the officers or agents of the Confederate government could not issue any order which the defendant, Alfred Huger, was bound to respect. I instruct you, the United States having conceded to the Confederate States (so-called) the authority of a belligerent, the power incident to the authority of a belligerent was conceded to the Confederate States. and they had such right to give an order, which it was not possible for the postmaster or assistant postmaster here to dispute. They had the authority of a belligerent, and it was not within the competency of the postmaster to dispute the regular exercise of that authority.

I am further asked to instruct you. that this is not strictly a case to which the common law of agency or bailment applies. but a case of contract between the United States government and the defendant as equal contracting parties. and that the rights of the one, and obligations of the other. at most. were only suspended. and not impaired, by the late war; that the war having ceased. and physical obstructions removed, the defendant must respond to the requirement of his bond. I instruct you that this bond implies, on the one side and the other, a condition of things which renders it possible for its execution on either part, that is, that the United States on its part shall secure to the defendant that condition of things in which it was possible for him to execute the bond, and. if it does not secure him that condition of things. then he is not to be held to an impossibility. He cannot be called upon to discharge an obligation which it was impossible for him to discharge, by a condition of things which put it out of his power to meet his obligation, and which the United States had left him helpless when the obligation was to have helped him. When the United States was

unable to perform its own part, and was helpless to help him to discharge his obligation, he is not answerable for the failure to discharge that obligation. The obligation is at an end, and he is discharged.

Lastly, I am asked to rule that the surrender of the gold and postal envelopes belonging to the United States, by defendant, Alfred Huger, on the order of the agent of the Confederate government, received by him through the mails, and which contained no threat or suggestion of compulsion, was not a surrender or yielding up of the government property under the pressure of irresistible force.

I charge you, gentlemen, that an order from a government essentially military, and from the nature of things a military despotism, was the expression of a force that could not be resisted, and as peremptory of necessity as if the bayonet were at his throat, was a command which carried with it irresistible power. I would be understood as negativing the instructions asked for by the district attorney emphatically. I think the negative of this instruction as ruling the very essence of the case, that is, that the defendant living on the soil in such a contest in which such powers were engaged, the one struggling for existence, and the other for the rescue of its rightful authority, the one contending for the establishment of independence, and the other for the re-establishment of rightful constitutional rule and national integrity. In such a tremendous contest a party belligerent making a demand upon any inhabitant or citizen on its soil, made a demand which carried with it the necessity of instant obedience, and the refusal to obey which, if it did not bring harm to the party who might oppose it, would have promptly been executed by the government itself. I repeat, the execution of the demand, if not executed by the party himself, would be executed instantly by the government, and, if the property were not surrendered, it would be taken. The refusal to surrender would have been idle, certainly, and, at the same time, might have become dangerous.

[Under the rulings of the court, the jury found for the defendant.]